## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**HARVEY ANDRE FRANKLIN, SR.**                                    **MOVANT**

**v.**                                                   **No. 4:12CR61-SA-JMV**

**UNITED STATES OF AMERICA**                                **RESPONDENT**

## MEMORANDUM OPINION

This matter comes before the court on the motion of Harvey Andre Franklin, Sr., through

counsel, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has

responded to the motion; Franklin has replied, and the matter is ripe for resolution. For the reasons set

forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may

be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar

Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St.

John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law

of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is

equally significant in the United States. Article I, § 9, of the Constitution ensures that the right

of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or

invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56.

Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas*

*corpus* principles developed over time in both English and American common law have since

been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural
limitations and additional procedural changes were added in 1966. The scope of the
writ, insofar as the statutory language is concerned, remained essentially the same,
however, until 1996, when Congress enacted the Antiterrorism and Effective Death
Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners
and setting out special, new *habeas corpus* procedures for capital cases. The changes
made by the 1996 legislation are the end product of decades of debate about *habeas
corpus*.

*Id*.

## Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal

crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28

U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion

sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation

of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the

sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise

subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional

violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of

constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error

constitutes "a fundamental defect which inherently results in a complete miscarriage of justice."

*United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it

plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the

moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section

2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order

the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**[1]

In July 2009, the defendant, Harvey Franklin, became the superintendent of Greenville, Mississippi, Public Schools ("GPS").  Change of Plea Tr., p.21.  In January 2010, GPS entered into a consulting services contract with Teach Them to Read, Inc. d/b/a Early Detection Necessary Action[2] ("Teach Them to Read") a company owned and controlled by Edna Cochran Goble.  *Id*.  The stated purpose of the consulting contract was to assist GPS in an early intervention reading program that identified and accelerated "at-risk" reading students.  *Id*. at 22.  GPS eventually paid Teach Them to Read a total of approximately $1.4 million in a period of approximately eighteen months.  The source of funds for all of GPS payments to Teach Them to Read was federal grant money.  *Id*.

Franklin had known Goble for a number of years prior to 2009 and had advocated for the use of her reading products in public school systems in Georgia before he took the position as Superintendent in Greenville.  *Id*.  While Franklin was the superintendent of GPS, and GPS was paying over $1 Million to Goble's company, Teach Them to Read, Goble paid thousands of dollars to remodel Franklin's home in Greenville in the form of direct payments to contractors and suppliers, as well as payments to Franklin's American Express credit card account.  *Id*.  Goble also paid for tuition and lodging expenses for Franklin's daughters to attend college, Tulane University and Drexel University.  *Id*.  Goble also paid in full a promissory note on a 2010 Ford F-150 for Franklin's personal use for approximately $36,068.  *Id*.  The payments by

---

[1] The facts set forth in this memorandum opinion are taken nearly verbatim from the Government's Response to the instant § 2255 motion.

[2] E.D.N.A.

Goble to Franklin were made while Franklin was using his position as Superintendent of GPS to advocate for the use of Goble's reading products in GPS, which paid Goble approximately $1.4 million. *Id*. at 23.

In addition to these kickback/bribery payments Goble made to Franklin, the actual value of the services and products provided by Goble to GPS was far lower than the amounts charged to GPS and paid to Teach Them to Read (Goble's company). *Id*. For example, at Franklin's recommendation, GPS purchased 851 "reading units" from Teach Them to Read at a cost of $900 each – a total of $765,900. *Id*. The reading units consisted of a small plastic bin containing reading materials and an outline. *Id*; *see also*, Sentencing Hearing, Gov't Exhibit #2. Franklin maintains that the reading units provided some value to GPS students; however, he admitted during his plea hearing that the actual value of the reading units was substantially less than the $900 GPS paid for each unit. *Id*. GPS thus used federal grant funds to purchase the reading units at an inflated price. *Id*. Goble then used the funds she received as a result of the inflated prices to pay kickbacks/bribes to Franklin. *Id*.

On August 2, 2012, Mr. Franklin pled guilty to a three-count Information charging: (1) Conspiracy to Receive a Bribe (18 U.S.C. § 371 & 666(a)(1)(B)); (2) Federal Programs Bribery (18 U.S.C. § 666(a)(1)(B)); and (3) Embezzlement (18 U.S.C. § 641). Despite Franklin's claims to the contrary in his § 2255 Petition, his Plea Supplement included the standard language regarding cooperation and the possibility of a 5K1.1 Motion for Downward Departure:

COOPERATION:

(a) Agreement to Cooperate: The defendant agrees to cooperate with the United States Attorney by giving full and truthful statements to any and all agents assigned to interview defendant as to any and all knowledge defendant may have of other persons involved in any way in the offenses charged and all other criminal offenses, and to give full and truthful testimony in any federal proceedings, including any federal

grand jury, trial or other hearing, to which defendant is subpoenaed.  The defendant understands that a false statement to a federal agent or a failure to testify truthfully would subject the defendant to prosecution for false statement or perjury.

(b) Sentence Departures and Reductions:  The United States Attorney may before sentencing move the Court for a downward departure under § 5K1.1 of the United States Sentencing Guidelines based upon substantial assistance or may file after sentencing a Rule 35 motion to reduce sentence based upon defendant's cooperation. The defendant understands that the decisions whether to move for downward departure or to reduce sentence are entirely in the discretion of the United States Attorney, not the defendant or defendant's attorney, and that the Court can deny in whole or in part either or both of such motions.

*See* Plea Supplement, pp. 2-3 (emphasis added) (Government Exhibit #1).  In entering his guilty plea, Mr. Franklin agreed with the government's factual basis and admitted the facts as described above.[3]  During the hearing, the court told Franklin that his guilty plea could result in his liability to pay restitution.  Change of Plea Tr., p.14.

As the victim in this case, the Department of Education requested that Franklin be required to repay the entire amount of federal grant money that GPS paid to Goble:  $1,433,247. The United States Probation Service prepared a Pre-Sentence Investigation Report ("PSR"), concluding that the amount of restitution applicable to Franklin should be $1,433,247, or the total amount of federal grant money that GPS paid to Goble.  Prior to his sentencing hearing, Franklin's defense counsel filed objections to his PSR and a thorough Sentencing Memorandum urging the court to impose a sentence below the Guidelines range.

---

[3] Ms. Goble was indicted by the Federal Grand Jury for her role in the bribery/kickback scheme. After her initial plea agreement was rejected by the Court, she pled guilty in front of the District Court to one count of conspiracy to commit federal programs bribery on June 19, 2014, and was sentenced to 30 months imprisonment.  The court ordered her to pay $1,041,432.22 in restitution. (*See* Judgment, *United States v. Edna Goble*, 4:12CR183, Doc #41; https://ecf.msnd.uscourts.gov/doc1/10311565779).

The PSR calculated Franklin's recommended guideline range *based on the amount of the bribes paid to Franklin, $272,294*, a much lower figure than the amount of the grant money: $1,433,247. *See* PSR ¶ 16. For this reason, Mr. Franklin's complaints about the restitution amount, both on appeal and in his § 2255 petition, have no bearing on the length of his sentence. Instead, the calculations affect only the amount of restitution ordered by the court. Franklin's defense counsel objected to the amount of restitution at sentencing, arguing that Goble's reading program had provided *some* value to GPS – and that value should be deducted from the total amount of restitution owed. The court held a sentencing hearing for Mr. Franklin on November 13, 2013.

At the hearing, the government called Agent La'Trishia Stallings to testify in support of the government's request for restitution. Sentencing Hearing Tr., p.8. Agent Stallings is a Special Agent with the United States Department of Education, Office of Inspector General and was one of the primary investigators on this case. *Id*. Agent Stallings explained that she was unable to determine an exact value for the reading program provided to GPS by Goble. *Id*. at 14. The only other school district that used Goble's program as extensively as GPS was the Walton County School District in Georgia. *Id.* at 26. The information from Walton County was, however, tainted – because when Walton County used Goble's program, Franklin was an assistant superintendent in Walton County and was the Director of Curriculum, advocating on behalf of Goble. *Id*. at 26. Thus, Mr. Franklin advocated for Goble's reading curriculum at both schools.

Agent Stallings contacted a large school district in Mississippi, the Desoto County Public School District, and determined that despite being much larger than GPS, Desoto County spent

only approximately $200,000 on a comprehensive reading program for its elementary schools. *Id*. at 17-18. Agent Stallings also contacted other reputable vendors that offered interventional reading programs to public school districts in Mississippi. She determined that other vendors could have provided a supplemental reading program to GPS for considerably less than the $1.4 million charged by Goble. *Id*. at 19.

Goble also charged GPS separately for consulting days. Agent Stallings testified that Goble's consulting rate of $1,600 per day was similar to the daily rate of other vendors; however, the other vendors would typically only charge for 3-5 days of consulting as opposed to the 122 days Goble charged to GPS. *Id*. Agent Stallings also spoke with teachers and administrators at GPS, and they provided estimates of the actual value of the reading units (i.e. Gov't Exhibit #2) from as low as $50 to $250. *Id*. at 21. Agent Stallings explained that these values were estimates based on the opinions of the GPS employees. Id.

After hearing the testimony of Agent Stallings, the court found that the reading units were clearly not worth the $900 to $1,400 charged to GPS by Goble: "I am looking at a Tupperware box on the exhibit table [Gov't Exhibit #2], a box that I could – a plastic box I could go to Wal-Mart and purchase, and there are some leaflets and some documents and appears to be some copies of some books in there. I just cannot fathom that that box of papers is worth $900." *Id*. at 59-60. The court noted that any value assigned to the reading units was speculation, and that the court was inclined to order restitution in the entire amount paid to Goble. The court then gave Mr. Franklin an opportunity to demonstrate that the reading units did have some value, and Franklin testified as to his opinion of the value of the units.

He stated that, in his opinion, the actual value of the reading units ranged from $400 - $1,600 per unit and that the $900 per unit charge was an average of the actual value of the units. *Id.* at 71. Mr. Franklin also testified that the units had an intangible value beyond the physical contents of each box, value arising from the knowledge and expertise that Goble provided to GPS in addition to the reading units. *Id.* at 72-73. However, on cross-examination, Mr. Franklin acknowledged that GPS also Goble separately for her consulting time, 122 days at $1,600 per day, in addition to the cost of the reading units. *Id.* at 74. Franklin also admitted that the $400 - $1,600 value he attributed to the reading units was merely his opinion. *Id.* at 75.

During his testimony, Mr. Franklin refused to acknowledge something he had previously admitted, in his factual basis, that "the actual value of the services and products provided by Goble to the Greenville Public Schools was substantially lower than the amounts charged to the Greenville Public Schools and paid to Teach Them to Read, Goble's company." *Id.* at 74-75.

After hearing the testimony of Agent Stallings and Mr. Franklin, the court granted Franklin's objection to the PSR and reduced his restitution by $232,000 based on an estimated value of $250 per unit for 928 reading units. *Id.* at 94. The court rejected the argument that Goble's reading program provided a monetary value to GPS in the form of increased test scores: "And so I totally reject the idea that some abstract, arbitrary figure should be assessed for any value that the Greenville School District may have received by way of the increase in their test scores." *Id.*

The court sentenced Mr. Franklin to a within-guideline sentence of 76 months imprisonment and ordered him to pay $1,201,247 in restitution, including an immediate payment of $75,000. *Id.* at 98. The court entered judgment on November 18, 2013. On November 21,

2013, Mr. Franklin filed a Motion to Reconsider the order of the $75,000 lump sum payment. On November 29, 2013, Franklin filed a notice of appeal. On December 2, 2013, the court denied the Motion to Reconsider, and Franklin pursued his appeal to the Fifth Circuit.

Franklin did not appeal the length of his sentence, only the amount of his restitution. On December 5, 2014, the Fifth Circuit issued a per curiam opinion affirming the amount of Franklin's restitution order. *See United States v. Franklin*, 595 F.App'x. 267 (5th Cir. 2014). Mr. Franklin did not pursue rehearing or seek a writ of certiorari with Supreme Court. The mandate issued on December 30, 2014. Doc. #40.

For purposes of the one-year limitations period provided in 28 U.S.C. § 2255, the judgment of the District Court became final on March 5, 2015.[4] On March 3, 2016, Franklin timely filed the present 28 U.S.C. § 2255 Motion.

**Claims for Relief**

In the instant § 2255 motion, Franklin presents the following claims for relief, all of which are framed in terms of ineffective assistance of counsel:

(1) Counsel failed to object to the Presentence Investigation Report (primarily regarding the method used to calculate the amount of restitution and loss);

(2) Counsel failed to present mitigating evidence regarding § 3553 factors supporting a downward departure;

---

[4] The limitations period to challenge to a federal conviction under 28 U.S.C. § 2255 "becomes final generally upon the expiration of direct review or the time for seeking direct review." *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008). Thus:

> [f]or the purpose of starting the clock on § 2255's one-year limitation period . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.

*Clay v. United States*, 537 U.S. 522, 525, 123 S. Ct. 1072, 1074, 155 L. Ed. 2d 88 (2003).

(3) Counsel permitted Mr. Franklin to plead guilty under a plea agreement excluding the potential for a sentence reduction for cooperation with the United States Attorney's Office and providing substantial assistance under United States Sentencing Guidelines 5k1.18; and

(4) Counsel failed to attend an "*ex parte* conversation" with the court and the Government.

Mr. Franklin also requests an evidentiary hearing.

## The Doctrines of Procedural Default and Procedural Bar

A defendant may not raise issues in his § 2255 motion, other than ineffective assistance of counsel, that he could have raised on direct appeal. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). This doctrine is known as *procedural default.* Similarly, if an inmate has raised an issue on direct appeal, and the Fifth Circuit decided he issue against him, the court may not consider them on collateral review: "[I]ssues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). This doctrine is known as *procedural bar*.

## Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a § 2255 movant's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief on direct appeal. *See United States v.*

*Flores*, 981 F.2d 231 (5ᵗʰ Cir. 1993) (in the § 2254 context).[5]  To establish prejudice, a movant must

show that, but for the alleged error, the outcome of the proceeding would have been different.  *Pickney*

*v. Cain*, 337 F.3d 542 (5ᵗʰ Cir. 2003).  Even if a movant fails to establish cause for his default and

prejudice from its application, he may still overcome a procedural default or bar by showing that

application of the bar would result in a fundamental miscarriage of justice.  To show that such a

miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not

commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5ᵗʰ Cir. 1999) (citing *Ward*

*v. Cain,* 53 F.3d 106, 108 (5ᵗʰ Cir. 1995)).  Further, he must support his allegations with new, reliable

evidence – that was not presented at trial – and must show that it was "more likely than not that no

reasonable juror would have convicted him in light of the new evidence."  *Fairman,* 188 F.3d at 644

(citations omitted).

      In this case, Mr. Franklin challenged the calculation of restitution during his direct appeal

to the Fifth Circuit, which upheld this court's calculation.  Thus, as discussed below, the court

cannot find that counsel provided ineffective assistance as to the restitution amount because the

Fifth Circuit has already held the amount to be proper.  This issue is precluded by the doctrine of

---

[5] The doctrines of procedural default and procedural bar operate in a similar manner, whether during a collateral challenge to a state conviction under 28 U.S.C. § 2254, or to a federal conviction under 28 U.S.C. § 2255:

> The procedural default doctrine applies to state prisoners seeking relief under 28 U.S.C.A. § 2254 and federal prisoners seeking relief under 28 U.S.C.A. § 2255.

§ 24:3.  General principles, Postconviction Remedies § 24:3.  Thus, the court will cite authority in both contexts on this issue.

procedural bar. In any event, as discussed below, restitution is not an issue which may be decided in a motion for § 2255 relief.

## Ineffective Assistance of Counsel

The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

As discussed below, none of Mr. Franklin's grounds for relief has merit, and several are directly contradicted in the record.

## Section 2255 Is Not the Proper Vehicle Through Which
## to Challenge the Amount of Restitution

Mr. Franklin's primary claim for relief is that the court has miscalculated the amount of restitution he must pay. This is not a proper claim under 28 U.S.C. § 2255. *See United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999). As such, to the extent that the instant § 2255 motion challenges the amount of restitution, it must be dismissed for failure to state a claim upon which relief could be granted.

## Contrary to Mr. Franklin's Claims, Defense Counsel Objected to the PSR

On February 5, 2013, Mr. Franklin's defense counsel filed objections to the PSR in the form of a pleading entitled "Position of Defendant with Respect to Sentencing Factors." *See* Doc. 17-2. In that document, defense counsel objected to the calculation of Mr. Franklin's guideline loss amount and noted that the guideline loss amount should be lowered to $272,294. In addition, Franklin's counsel also objected to the restitution amount. In her objections to the PSR, counsel made the same argument Franklin has made in his § 2255 petition: (1) Franklin should get credit for the actual value of the reading units; and (2) the EDNA program improved the reading test scores of students in the GPS system, thus adding intangible value to the units.

On November 5, 2016, Franklin's counsel filed a lengthy sentencing memorandum with four exhibits. Doc. 17 and 18. In the fifteen-page memorandum, counsel reminded the court of her objections to the PSR and the restitution amount – and included the previously-filed objections to the PSR as an attachment.

During Mr. Franklin's November 13, 2013, sentencing hearing, the court heard lengthy testimony from the investigating agent and from Franklin himself. Franklin presented his case from the witness stand regarding why the restitution amount should be lower. Franklin also

provided a statement to the court in allocution, emphasizing many of the same claims made in the instant petition. *See* Sentencing Hearing Tr., pp. 88-89.

In Mr. Franklin's objections to the PSR, again in the Sentencing Memorandum, and also in the lengthy sentencing hearing, counsel argued that he should get credit for the value of the reading units and that the court should consider the reading improvements made as a result of the program. Mr. Franklin re-urges these arguments in his § 2255 petition.

The court explicitly rejected Franklin's claim that he should get some credit for improving the test scores of GPS students: "And so I totally reject the idea that some abstract, arbitrary figure should be assessed for any value that the Greenville School District may have received by way of the increase in their test scores." Sentencing Hearing Tr., p.94. The court granted Mr. Franklin's objection to the amount of restitution and lowered the restitution amount to $1,201,247. The Fifth Circuit affirmed that decision on appeal. Defense counsel objected to the PSR, provided the court with a lengthy sentencing memorandum, and presented evidence at his sentencing hearing on his behalf. Her representation simply cannot be characterized as ineffective assistance of counsel.

### Contrary to Mr. Franklin's Allegations, Trial Counsel Presented Mitigating Evidence at Sentencing

Mr. Franklin also alleges that defense counsel was deficient in not providing the court with mitigating evidence on his behalf. However, Franklin's defense counsel indeed offered mitigating evidence and made largely the same arguments that Franklin now presents in the instant motion. None of the information presented in Franklin's § 2255 motion (regarding the amount of loss or restitution) would affect his guideline range or reduce his term of

imprisonment; as such, his arguments do not support his request for relief under 28 U.S.C. § 2255.

On November 5, 2016, Mr. Franklin's defense counsel filed a detailed sentencing memorandum with four exhibits. *See* Doc. 17 and 18. In the fifteen-page memorandum, counsel requested a sentence below the Guideline range, citing specific sections and application notes of the Sentencing Guidelines. Counsel analyzed individual § 3553 factors and argued that they favored a lower sentence for Franklin. In the Sentencing Memo, counsel repeatedly referred to the improvements at GPS during Mr. Franklin's tenure as Superintendent, comparing the state of GPS before and after Franklin's time there. In addition to the Sentencing Memo, Mr. Franklin's counsel presented twenty-three letters to the court on his behalf. Counsel also presented extensive argument at the sentencing hearing – and urged the court to impose a sentence below the Guideline range. *See* Sentencing Tr., pp. 81-86. Mr. Franklin, himself, offered a statement to the court to that effect in allocution. *Id*. at 88-89.

Mr. Franklin now presents those same arguments in the instant motion. Trial counsel was not deficient, and the proceedings were fair. *See e.g. United States v. Talamini*, 2013 WL 1197926 at *3 (N.D. Tex. 2013) (unpublished) ("Movant does not identify any further information that counsel could have uncovered that would have favorably changed the outcome of his case."); *United States v. Garcia-Hernandez*, 2016 WL 5871372 at *3 (S.D. Tex. 2016) (defense counsel made the arguments petitioner claims he should have made). Mr. Franklin's counsel made the same arguments he now presents in his § 2255 petition. The court considered those arguments in earlier proceedings and will not reconsider them during post-conviction collateral relief.

**Contrary to Mr. Franklin's Allegations, His Plea Agreement**
**Contained Language Regarding Cooperation**

In his § 2255 petition, Mr. Franklin repeatedly claims that his defense counsel was ineffective for failing to demand that a reduced sentence for cooperation or substantial assistance be included as part of the plea agreement. In his § 2255 motion, Mr. Franklin claims "[n]either the plea agreement nor the plea supplement contain the standard language setting out that pursuant to the Government's evaluation of the Defendant's cooperation it will move for a downward departure. . . " Franklin § 2255 Petition, p.21. This statement is demonstrably false.

Franklin's Plea Supplement contains the standard language regarding cooperation and makes clear that any motion for a below-guideline sentence was left to the discretion of the United States Attorney:

COOPERATION:

(a) Agreement to Cooperate: *The defendant agrees to cooperate with the United States Attorney* **by giving full and truthful statements** *to any and all agents assigned to interview defendant as to any and all knowledge defendant may have of other persons involved in any way in the offenses charged and all other criminal offenses*, and to give full and truthful testimony in any federal proceedings, including any federal grand jury, trial or other hearing, to which defendant is subpoenaed. The defendant understands that a false statement to a federal agent or a failure to testify truthfully would subject the defendant to prosecution for false statement or perjury.

(b) Sentence Departures and Reductions: *The United States Attorney may before sentencing move the Court for a downward departure under § 5K1.1 of the United States Sentencing Guidelines based upon substantial assistance or may file after sentencing a Rule 35 motion to reduce sentence based upon defendant's cooperation.* ***The defendant understands that the decisions whether to move for downward departure or to reduce sentence are entirely in the discretion of the United States Attorney, not the defendant or defendant's attorney***, *and that the Court can deny in whole or in part either or both of such motions.*

*See* Plea Supplement, pp. 2-3 (emphasis added) (Attached as Exhibit #1 to the Government's Response). Mr. Franklin's claim that his defense counsel failed to include cooperation language in his plea agreement is simply incorrect and has absolutely no merit.

### Neither Law Enforcement Agencies Nor Government Attorneys Met With Mr. Franklin Without First Consulting His Attorney

Law enforcement agents and government attorneys did not meet with Franklin without first consulting with his attorney. His defense counsel was invited to be present at each meeting with the government. Mr. Franklin entered his guilty plea on August 2, 2012. Over a year later, his defense counsel chose not to attend a meeting. At every meeting with the government, including that meeting, Mr. Franklin was allowed to contact defense counsel at any time and as often as he wished to speak with her. No one prevented Mr. Franklin from speaking with his attorney. This claim is without merit and will be denied.

### The Government Did Not Recommend a Reduction in Sentence Because Mr. Franklin Refused to Fully Cooperate

On the eve of Ms. Goble's trial, Mr. Franklin refused to acknowledge that her payments to him were a bribe, rather than a loan. *See* Doc. No. 19; Sentencing Hearing Tr., pp.24-25. During his sentencing hearing, he remained reluctant to admit the basic details of the factual basis supporting his guilty plea. *See* Sentencing Hearing Tr., p. 74-75. Although Mr. Franklin pled guilty to receiving bribes from Ms. Goble, *to this day* he only grudgingly recognizes Ms. Goble's payments to him as a bribe. *See, e.g.*, Franklin § 2255 petition, p. 27. Mr. Franklin's insistence that the payments from Goble were a loan and not a bribe was at odds with his sworn guilty plea. As explained in the government's response to the Sentencing Memorandum, and also during the sentencing hearing, Franklin did not substantially assist the government in the

prosecution of Goble, and his cooperation did not warrant the filing of a motion for downward departure pursuant to Section 5K1.1 of the Sentencing Guidelines. In any event, the Fifth Circuit routinely denies attempts to obtain relief under 28 U.S.C. § 2255 based on the government refusing to file a 5K1.1 motion. *See, e.g., United States v. Jack*, 3 F.3d 440, 1993 WL 347310 at *1 (5th Cir. 1993); *United States v. Ventura-Gutierrez*, 136 F.3d 1328, (5th Cir. 1998). Certainly, the facts of this case would not warrant such a ruling.

### Mr. Franklin Has Not Identified the Time, Place, or Purpose of an Alleged "*Ex Parte* Meeting" with the Court

Unsupported allegations are insufficient to support a 28 U.S.C. § 2255 claim. *See e.g., Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("[A]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his … petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.") There is no indication in the record that Mr. Franklin's defense counsel was prevented from attending an *ex parte* meeting between the court and the government. Indeed, there is no record of such a meeting. Mr. Franklin carries the burden of persuasion during his § 2255 proceedings, and he has not shown that defense counsel was prevented from attending an *ex parte* meeting – or even that such a meeting took place. This claim is without merit and will be denied.

### An Evidentiary Hearing Is Not Necessary

If a § 2255 motion is not summarily dismissed, "the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 [Expanding the Record] to determine whether an evidentiary hearing is warranted." Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts. Under the

- 19 -

Anti-Terrorism and Effective Death Penalty Act, ("AEDPA"), a court may decide a motion to vacate, set aside, or correct sentence "without requiring the production of the prisoner at [a] hearing." 28 U.S.C. § 2255(c). Indeed, a full and fair hearing does not necessarily require live testimony; a paper hearing can be sufficient to afford a petitioner a full and fair opportunity to present factual issues pertinent to his case. *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) (applied to a *habeas corpus* petition under 28 U.S.C. § 2254). The court has reviewed the file and records of this case, has applied the analysis above, and has not encountered any claims the movant raises requiring an evidentiary hearing. Thus, Mr. Franklin's request for an evidentiary hearing will be denied.

## Counsel's Assertion of Facts Contrary to the Record

The court is troubled by several instances in which counsel for the Movant has made factual assertions which are directly contradicted in the record: (1) that defense counsel had failed to secure a cooperation agreement during plea negotiations (Doc. 42 at 7); (2) that defense counsel failed to introduce mitigating evidence at sentencing (Doc. 42 at 10); and (3) that defense counsel failed to object to the PSR and restitution amount (Doc. 42 at 20). These assertions were not minor facts which could easily have been overlooked; instead, each formed the basis of its own section in the instant § 2255 motion. The court describes each assertion briefly below.

### Cooperation Agreement

The court's docket lists the Movant's Plea Agreement [4] and Plea Supplement [5]. A cursory review of these short documents reveals that the Plea Supplement contains the standard cooperation agreement. Doc. 5 at 3-4.

**Mitigating Evidence at Sentencing and § 3553 Factors**

Counsel for the Movant styles the relevant section of the instant § 2255 motion "Defense Counsel Was Ineffective for Failure to Present Mitigating Evidence § 3553 Factors and Other Factors Supporting a Downward Departure or Variance." Doc. 42 at 10. In that section, counsel argues,

> The only information in [trial counsel's] objection to paragraph 11 was that the GPSD was not in conservatorship at any time during Dr. Franklin's tenure as superintendent. Counsel also failed to include information provided to her by Dr. Franklin revealing that a revised audit of the GPSD's financials showed an $850,000 negative fund balance when Dr. Franklin began his tenure in 2010. However, during Franklin's final year at the school district[, it] had a balance of over $10,800,000 – an increase of some $10 million ….

*Id*. As the Government notes, however, Mr. Franklin took the opportunity to offer such mitigating evidence by giving testimony at his sentencing hearing. Doc. 39 at 63-80. During that testimony, he informed the court:

> I came there with a vision to – to move the school district forward. In the last three years, if you look at the school district, you can see what we did a lot of great things. *Brought it from out of financial ruin to its present status of – when I left, they had a 10 point something million-dollar fund balance.*

Doc. 39 at 88-89 (emphasis added). In other words, Mr. Franklin actually provided the court with the information that current counsel argues was not presented. Mr. Franklin's testimony regarding this issue was unrebutted during the hearing; however, the court rejected those facts as a basis for valuing the reading kits while computing amount of loss and restitution.

Further, the financial state of GPS had no bearing on the length of Mr. Franklin's incarceration in the present case, and the court decided not to engage in speculation regarding the efficacy of Ms. Goble's reading program when calculating the appropriate amount of restitution. There is simply no way to tell whether the improved test scores GPS experienced were the result

of Ms. Goble's reading program or something else.  In addition, there is no way to know whether some other – far less costly – reading program would have provided the same or better results. The court determined that the value of each kit was $250 – based upon the value of similar kits provided to other schools.

In short, current counsel's contention that trial counsel "failed to present mitigating evidence" is not accurate.  Trial counsel demonstrably provided mitigating evidence – and argued forcefully for a downward departure or downward variance, as discussed above.

Most importantly, this information has no relevance to the instant § 2255 motion because Mr. Franklin was sentenced based not upon the amount of loss to the School District, but upon the amount of the bribe he received (a far smaller sum).  Thus, the amount of loss to the school affected only the amount of restitution – not Mr. Franklin's sentence – and is thus irrelevant in a § 2255 proceeding.

### Failure to Object to the PSR

Again, present counsel's assertion is contrary to facts easily gleaned from the record. Trial counsel filed a Sentencing Memorandum [17], followed immediately by an Amended Sentencing Memorandum [18], both of which contain numerous objections and cogent arguments supporting those objections.

### The Effect of Factually Incorrect Allegations

Counsel's demonstrably incorrect allegations are puzzling to the court, as the Government was sure to identify the inaccuracies in its response – and indeed did so.  Inclusion of these inaccuracies caused attorneys and staff in the United States Attorney's Office to read, analyze, and check the allegations – as well as address them in a response.  In addition, the judge and law clerks assigned to

this case had to conduct similar review, analysis, and drafting – and staff with the Clerk's Office had

to place the various motions, briefs, responses, and orders on the court's docket. In short, these

incorrect factual allegations created unnecessary work for all concerned in this case. The court trusts

that counsel for the Movant in this case will not include similar factual inaccuracies in future

submissions to the court.

### Conclusion

In sum, none of the Movant's claims has merit. Indeed, several are directly contradicted in the

record, and the instant motion to vacate, set aside, or correct sentence will be denied. A final judgment

consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of October, 2018.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE